**ORIGINAL**

JEFFERSON B. SESSIONS III
United States Attorney General
ADAM L. BRAVERMAN
United States Attorney
MICHAEL G. WHEAT, CBN 118598
ERIC J. BESTE, CBN 226089
JANAKI S. GANDHI, CBN 272246
COLIN M. MCDONALD, CBN 286561
Special Attorneys of the United States
880 Front Street, Room 6293
San Diego, CA 92101
Tel: 619-546-8437/6695/8817/9144
Email: michael.wheat@usdoj.gov

Attorneys for the United States

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
JUL 12 2018
at 3 o'clock and 15 min. P M.
SUE BEITIA, CLERK

# UNITED STATES DISTRICT COURT
## DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JESSE MICHAEL EBERSOLE,<br><br>Defendant. | Case No. CR 18-00094-JMS<br><br>PLEA AGREEMENT |

### MEMORANDUM OF PLEA AGREEMENT

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the United States of America, by its attorney, the United States Attorney General Jefferson B. Sessions III, and the Defendant, JESSE MICHAEL EBERSOLE, and his attorney, Donald L. Wilkerson, have agreed upon the following:

1

1. Defendant acknowledges that he has been charged in an Information with violating Title 18, U.S.C., Section 371-Conspiracy. Defendant understands that the offense to which Defendant is pleading guilty has the following elements:

    a. There was an agreement between two or more persons to commit an offense against the United States, that is, to obstruct justice in violation of Title 18, U.S.C., Section 1512(c);[1]

    b. The defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

    c. One of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

2. Defendant has read the charges against him contained in the Information, and those charges have been fully explained to him by his attorney.

3. Defendant fully understands the nature and elements of the crimes with which he has been charged.

4. Defendant will waive indictment and will enter a voluntary plea of guilty to the Information charging him with Conspiracy, in violation of Title 18, U.S.C., Section 371.

---

[1] The elements for this offense are:

Title 18, U.S.C., Sections 1512(c):
1. The defendant obstructed, influenced, or impeded any official proceeding, and
2. The defendant acted corruptly.
The term "corruptly" must reflect some consciousness of wrongdoing.

5. Defendant agrees that this Memorandum of Plea Agreement shall be filed and become part of the record in this case.

6. Defendant enters this plea because he is in fact guilty of Conspiracy and agrees that his plea is voluntary and not the result of force or threats.

7. Defendant understands that the penalties for the offense to which he is pleading guilty include:

    a. up to 5 years imprisonment;

    b. a fine of up to $250,000;

    c. a term of supervised release of not more than three years, and

    d. a $100 special assessment.

Defendant agrees to pay $100 for the count to which he is pleading guilty to the District Court's Clerk's Office, to be credited to said special assessments, before the commencement of any portion of sentencing. Defendant acknowledges that failure to make such full advance payment in a form and manner acceptable to the prosecution will allow, though not require, the prosecution to withdraw from this agreement at its option.

8. Defendant admits the following facts and agrees that they are not a detailed recitation, but merely an outline of what happened in relation to the charge to which Defendant is pleading guilty:

a. In 2009, Defendant JESSE MICHAEL EBERSOLE (EBERSOLE) met Katherine Kealoha ("Kealoha") when they became Pacific Century Fellows. Shortly thereafter, Kealoha began showering EBERSOLE with gifts and financial benefits, sometime thereafter EBERSOLE and Kealoha entered into an intimate personal relationship. All told, between 2009 and 2015, Kealoha provided EBERSOLE with over $20,000 in benefits.

b. On or about November 18, 2009, Kealoha paid $310.21 to Hawaiian Airlines for EBERSOLE's travel from Hilo, Hawaii, to Honolulu, Hawaii.

c. On or about November 23, 2009, using the alias *Alison Lee Wong*, Kealoha caused a $1,387.12 cashier's check, with the memo line "EPA Review," to be issued to EBERSOLE, as "a bonus" for a no-show job at an "environmental company" Kealoha claimed to control.

d. On or about January 11, 2012, Kealoha purchased services in preparation for her trip to Hilo, Hawaii, on January 12, 2012, to meet EBERSOLE.

e. On or about January 12, 2012, Kealoha flew from Honolulu, Hawaii to Hilo, Hawaii, where she rented a hotel room for $105.47 to meet EBERSOLE.

f.  On or about January 29, 2012, Kealoha paid $262.61 to Hawaiian Airlines for her to fly from Honolulu, Hawaii to Hilo, Hawaii, to visit EBERSOLE.

g.  On or about January 31, 2012, Kealoha purchased goods in preparation for her trip to Hilo, Hawaii, on February 2, 2012, to meet EBERSOLE.

h.  On or about February 3, 2012, Kealoha flew from Honolulu, Hawaii to Hilo, Hawaii, where she rented a room at a hotel for $120.93, to meet EBERSOLE.

i.  On or about August 14, 2012, Kealoha paid $295.00 to Hawaiian Airlines for EBERSOLE's travel from Hilo, Hawaii, to Honolulu, Hawaii.

j.  In November 2012, Kealoha paid a number of expenses associated with EBERSOLE's expected travel to Honolulu, Hawaii.  For example, on or about November 23, 2012, Kealoha paid $138.00 to Hawaiian Airlines for EBERSOLE's travel from Hilo, Hawaii, to Honolulu, Hawaii, and $153.85 to a Honolulu hotel for her and EBERSOLE to meet.  Similarly, on or about November 30, 2012, Kealoha paid $173.30 to a Honolulu hotel for her and EBERSOLE to meet.

k.  On or about April 13, 2017, EBERSOLE received a subpoena directing him to appear before the Federal grand jury at the United States

District Court for the District of Hawaii in Honolulu, Hawaii. EBERSOLE contacted Kealoha about this subpoena, and they discussed whether the grand jury would question EBERSOLE about their relationship. EBERSOLE and Kealoha agreed to corruptly obstruct the grand jury's investigation by concealing the true nature of their intimate personal relationship and the financial benefits Kealoha provided to EBERSOLE.

l.   On or about April 20, 2017, EBERSOLE appeared before the Federal grand jury in Honolulu, Hawaii, and falsely claimed that he and Kealoha were just "friends," and that he had "no idea" why his name would appear on Kealoha's credit card statements. After this testimony, EBERSOLE discussed his false and misleading testimony with Kealoha.

m.   On or before May 18, 2017, Kealoha met EBERSOLE before he appeared before the Federal grand jury a second time.

n.   On or about May 18, 2017, EBERSOLE appeared before the Federal grand jury and refused to produce documents and answer questions.

o.   In or about August 2017, Kealoha arranged for Attorney 3 to represent EBERSOLE in connection with a proceeding in the USDC-Hawaii to compel EBERSOLE to produce documents to, and testify before, the Federal grand jury. Attorney 3 represented EBERSOLE from August 2017 through May 2018.

      p.    After September 7, 2017, but before October 3, 2017, after reviewing a transcript of his April 2017 appearance before the grand jury, EBERSOLE provided Kealoha with details of his prior false testimony.

      q.    On or about October 4, 2017, Kealoha met EBERSOLE alone, at Attorney 3's office/residence for two hours, where Kealoha told him to continue to deceive the Federal grand jury about the true nature of their intimate relationship, and to falsely claim they were just friends.

      r.    On or about October 5, 2017, EBERSOLE falsely claimed before the Federal grand jury that he and Kealoha were just "friends," that they did not have a "romantic" relationship, and that he was "baffled" as to why airline tickets in his name would appear on Kealoha's credit card statement.

9.    Pursuant to CrimLR32.1(a) of the Local Rules of the United States District Court for the District of Hawaii, the parties agree that the charge to which the Defendant is pleading guilty adequately reflects the seriousness of the actual offense behavior and that accepting this Agreement will not undermine the statutory purposes of sentencing.

10.    Pursuant to CrimLR32.1(b) of the Local Rules of the United States District Court for the District of Hawaii and Section 6B1.4 of the Sentencing Guidelines, the parties stipulate to the following for the purpose of the sentencing of Defendant in connection with this matter:

  a. Factual admissions, see ¶ 8 above.

  b. Offense level stipulations:

   (1) Base offense level [USSG § 2J1.2]  +14

   (2) Acceptance of responsibility [USSG § 3E1.1(a)] -2

The parties further agree that other guideline sections may be applicable to Defendant's case.

11. The parties agree that notwithstanding the parties' Agreement herein, the Court is not bound by any stipulation entered into by the parties but may, with the aid of the presentence report, determine the facts relevant to sentencing.

12. The Defendant is aware that he has the right to appeal his conviction and the sentence imposed. Defendant knowingly waives the right to appeal, except as indicated in subparagraph "b" below, his conviction and any sentence within the maximum provided in the statute(s) of conviction or the manner in which that sentence was determined, on any ground whatever, in exchange for the concessions made by the prosecution in this plea agreement.

  a. The Defendant also waives his right to challenge his conviction or sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255, except that defendant may make such a challenge (1) as indicated in subparagraph "b" below, or (2) based on a claim of ineffective assistance of counsel.

b. If the Court imposes a sentence greater than specified in the guideline range determined by the United States to be applicable to the Defendant, the Defendant retains the right to appeal the portion of his sentence greater than specified in that guideline range and the manner in which that portion was determined and to challenge that portion of his sentence in a collateral attack.

c. The prosecution retains its right to appeal the sentence and the manner in which it was determined on any of the grounds stated in Title 18, United States Code, Section 3742(b).

13 The Defendant understands that the District Court in imposing sentence will consider the provisions of the Sentencing Guidelines. The Defendant agrees that there is no promise or guarantee of the applicability or non-applicability of any Guideline or any portion thereof, notwithstanding any representations or predictions from any source.

14. The Defendant understands that this Agreement will not be accepted or rejected by the Court until there has been an opportunity by the Court to consider a presentence report, unless the Court decides that a presentence report is unnecessary. The Defendant understands that the Court will not accept an agreement unless the Court determines that the remaining charge adequately reflects the seriousness of the actual offense behavior and accepting the agreement will not undermine the statutory purposes of sentencing.

15. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a. If Defendant persisted in a plea of not guilty to the charges against him he would have the right to a public and speedy trial. The trial could be either a jury trial or a trial by a judge sitting without a jury. The Defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the Defendant, the prosecution and the judge all must agree that the trial be conducted by the judge without a jury.

b. If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random. Defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that the Defendant is presumed innocent, and that it could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt.

c. If the trial is held by a judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not he or she was persuaded of the Defendant's guilt beyond a reasonable doubt.

   d. At a trial, whether by a jury or a judge, the prosecution would be required to present its witnesses and other evidence against the Defendant. Defendant would be able to confront those prosecution witnesses and his attorney would be able to cross-examine them. In turn, Defendant could present witnesses and other evidence on his own behalf. If the witnesses for the Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court.

   e. At a trial, the Defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify.

  16. Defendant understands that by pleading guilty, he is waiving all of the rights set forth in the preceding paragraph. Defendant's attorney has explained those rights to him, and the consequences of the waiver of those rights.

  17. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreement reached, other than those set forth in this Agreement, to induce Defendant to plead guilty.

  18. Should the Court refuse to accept this Agreement, it is null and void and neither party shall be bound thereto. The parties understand that the Court's rejection of any stipulation between the parties does not constitute a refusal to accept

this Agreement since the Court is expressly not bound by stipulations between the parties.

19. Defendant understands that the prosecution will apprise the Court and the United States Probation Office of the nature, scope and extent of Defendant's conduct regarding the charges against him, related matters, and any matters in aggravation or mitigation relevant to the issues involved in sentencing.

20. The Defendant agrees that he will fully cooperate with the United States.

   a. He agrees to testify truthfully at any and all trials, hearings, or any other proceedings at which the prosecution requests him to testify, including, but not limited to, any grand jury proceedings, trial proceedings involving codefendants and others indicted later in the investigation, and related civil proceedings.

   b. Defendant agrees to be available to speak with law enforcement officials and to representatives of the United States at any time and to give truthful and complete answers at such meetings, but he understands he may have his counsel present at those conversations, if he so desires.

   c. Defendant agrees he will not assert any privilege to refuse to testify at any grand jury, trial, or other proceeding, involving or related to the crime

in the Information or any subsequent charges related to this investigation, at which the prosecution requests him to testify.

        d.    Pursuant to Section 1B1.8(a) of the Sentencing Guidelines, the prosecution agrees that self-incriminating information provided pursuant to this Agreement to cooperate will not be used in determining the applicable guideline range, except as may be provided in this Agreement and under § 1B1.8(b) of the Sentencing Guidelines.

        21.    In the event that the Defendant does not breach any of the terms of this Agreement but the Court nonetheless refuses to accept the Agreement after Defendant has made statements to law enforcement authorities or representatives of the United States pursuant to this Agreement, the prosecution agrees not to use said statements in its case in chief in the trial of the Defendant in this matter. Defendant understands that this does not bar the use of information and evidence derived from said statements or prohibit the use of the statements by the prosecution in cross-examination or rebuttal.

        22.    Pursuant to Guideline Section 5K1.1 and Rule 35(b), Federal Rules of Criminal Procedure, the prosecution may move the Court to depart from the Guidelines on the ground that the Defendant has provided substantial assistance to authorities in the investigation or prosecution of another person who has committed an offense. Defendant understands that:

    a.  The decision as to whether to make such a request or motion is entirely up to the prosecution.

    b.  This Agreement does not require the prosecution to make such a request or motion.

    c.  This Agreement confers neither any right upon the Defendant to have the prosecution make such a request or motion, nor any remedy to Defendant in the event the prosecution fails to make such a request or motion.

    d.  Even in the event that the prosecution makes such a request or motion, the Court may refuse to depart from the Guidelines or to impose a sentence below the minimum level established by statute.

    DATED: Honolulu, Hawaii, _July 12, 2018_____.

AGREED:

JEFFERSON B. SESSIONS III
United States Attorney General

ADAM L. BRAVERMAN
United States Attorney

_/s/_____
MICHAEL G. WHEAT
ERIC J. BESTE
JANAKI S. GANDHI
COLIN M. MCDONALD
Special Attorneys to the Attorney General

_/s/_____
JESSE MICHAEL EBERSOLE
Defendant

_/s/_____
DONALD L. WILKERSON, Esquire
Attorney for Defendant